[No. E028198. Fourth Dist., Div. Two. Mar. 8, 2002.]

CITY OF CHINO, Plaintiff and Respondent, v.
AMY JACKSON, Defendant, Cross-defendant and Appellant;
DEVELOPER'S INSURANCE COMPANY, Defendant, Cross-complainant
and Respondent.

## COUNSEL

Floratos, Loll & Devine and Daniel D. White for Defendant, Cross-defendant and Appellant.

Law Offices of Hausman & Sosa, Carlos E. Sosa and Larry D. Stratton for Defendant, Cross-complainant and Respondent.

Jimmy L. Gutierrez, City Attorney; and Arturo N. Fiero for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—On July 30, 1998, the trial court, sitting as a municipal court, entered a judgment that was appealed to the appellate division. On October 20, 2000, the appellate division rendered an opinion after rehearing which it certified for publication. On November 2, 2000, we ordered the case transferred to this court pursuant to California Rules of Court (Rules), rules 62(a) and (b). Subsequently, all issues except one were settled between the parties.[1] We now consider the sole remaining issue.

### THE UNDERLYING CASE

Jackson Land Company (Jackson), a developer, built a subdivision in the City of Chino (the City). In order to do so, it entered into certain subdivision agreements with the City in which Jackson agreed to construct certain public improvements in the subdivision. To guarantee its work, Jackson obtained performance and warranty bonds from Developer's Insurance Company (DICO). In order to obtain the bonds, Jackson and others entered into two indemnity agreements with DICO.

In 1995, the City filed suit against Jackson and DICO, alleging that Jackson had failed to correct certain deficiencies in the improvements, and that DICO was the responsible surety. At trial, the City alleged that Jackson

---

[1] By order filed March 12, 2001, we reserved decision on Developer's Insurance Company's request that we take judicial notice of certain legislative materials. We now deny the request as the issue is moot.

had failed to perform certain warranty obligations under warranty bonds issued by DICO, and that DICO was liable on the bonds. The primary failure alleged was a failure to maintain certain trees in a vigorous and thriving condition during the one-year warranty period following acceptance by the City.

In response to the City's complaint, Jackson asserted a statute of limitations defense. The trial court eventually found that the contract cause of action was barred by the statute of limitations. (Code Civ. Proc., § 337.1.) It therefore found for all defendants on the City's contract cause of action.

DICO filed a cross-complaint against Jackson, other entities, and certain individuals, including Amy Jackson. DICO alleged that the cross-defendants had signed indemnity agreements which required cross-defendants to post collateral and reimburse DICO for any damages and attorney fees which it might sustain as a result of its issuance of the warranty bonds. Specifically, DICO argued that Amy Jackson was liable for such damages because she signed an indemnity agreement dated November 16, 1989.

The trial court decided DICO's cross-complaint by finding for DICO against all cross-defendants except Amy Jackson. It ordered that judgment should be entered in favor of Amy Jackson. DICO appealed that determination.

The City appealed the trial court's decision. The trial court then approved a settled statement prepared by the City for purposes of the appeal. (Rule 127(c).) In its order approving the settled statement, the trial court stated that "the Court's judgment was based solely and exclusively upon the statute of limitations and . . . the Court did not consider, determine or rule on any other issues of fact or law."

The appellate division disagreed with the trial court on the statute of limitations issue and found that the City's contract cause of action was not barred by Code of Civil Procedure section 337.1. On DICO's appeal, the appellate division found no substantial evidence supporting the trial court's decision: "We fail to see how the statute of limitations in section 337.1 exempts Amy from her obligation to DICO."[2] It therefore reversed the trial court's judgment in favor of Amy Jackson.

As noted above, we ordered the case transferred to this court.

---

[2]DICO's counsel has advised us that the statute of limitations issue had nothing to do with Amy Jackson and "pertained *only* to Chino's appeal of the liability of Jackson and DICO to it, and not the liability of Amy Jackson to DICO." We note, however, that Amy Jackson repeatedly argued that DICO's claim against her was barred by Code of Civil Procedure section 337.1. Amy Jackson does not mention this defense or raise this issue in her brief for this appeal.

## THE REMAINING ISSUE

Since all other issues have been disposed of, the only remaining issue is DICO's cross-appeal of the trial court's decision in favor of Amy Jackson. DICO's assertion that Amy Jackson is liable rests on the indemnity agreement of November 16, 1989. DICO argues that she should be treated like all the other entities and individuals signing the indemnity agreement, and that there is no basis for exempting her from liability on the agreement. It thus contends that the only issue is one of contractual interpretation, and that Amy Jackson is liable under the plain words of the indemnity agreement.

Amy Jackson argues: "It must be presumed that the Trial Court properly concluded that DICO failed to establish the necessary connection between the warranty bonds issued by DICO and the indemnity agreement executed by Amy Jackson. In other words, the Trial Court found there was no indemnity agreement executed by Amy Jackson that pertained to the specific tracts which were the subject of the bonds issued by DICO." (Original underscoring.) She thus urges that "[t]he trial court impliedly found the November 16, 1989 indemnity agreement applied to other tracts which had nothing at all to do with the bonds issued by DICO on the Chino development."

## STANDARD OF REVIEW

■ "General standards of appellate review apply to appeals from municipal courts transferred for decision to the Courts of Appeal." (*DiGiacinto v. Ameriko-Omserv Corp.* (1997) 59 Cal.App.4th 629, 631, fn. 1 [69 Cal.Rptr.2d 300].)

We agree with DICO that the issue is one of contract interpretation, i.e., the interpretation of the November 16, 1989 indemnity agreement. ■ "An indemnity agreement is to be construed like any other contract with a view to determining the actual intention of the parties [citations]. The paramount rule governing the interpretation of contracts is to give effect to the mutual intention of the parties *as it existed at the time of contracting*, so far as it is ascertainable and lawful [citation]. The [intention] of the parties must, in the first instance, be derived from the language of the entire contract." (*Leo F. Piazza Paving Co. v. Foundation Constructors, Inc.* (1981) 128 Cal.App.3d 583, 591 [177 Cal.Rptr. 268], original italics; see also Civ. Code, §§ 1635, 1636, 1638, 1639, 1643, 2778.) The proper standard of review of the trial court's interpretation of a contract depends on whether conflicting extrinsic evidence was admitted to interpret the document: "It is . . . solely a judicial function to interpret a written instrument unless the

interpretation turns upon the credibility of extrinsic evidence." (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].)

■ Although it appears from DICO's proposed settled statement[3] and Amy Jackson's argument that conflicting extrinsic evidence was admitted at trial to interpret the indemnity agreement, the trial court did not state any reason for not applying the agreement to Amy Jackson. Indeed, it expressly stated that it decided the case solely on statute of limitation grounds, and it did not make any ruling on any other issues of fact or law. As the appellate division noted, it is difficult to conceive of a statute of limitations reason why Amy Jackson should not be liable on the indemnity agreement when all other signers were held liable.

If the trial court considered whether or not to admit extrinsic evidence to aid in interpretation of the contract, our record does not disclose it. ■ The applicable general rule is stated in the leading case of *Winet v. Price* (1992) 4 Cal.App.4th 1159 [6 Cal.Rptr.2d 554]: "The decision whether to admit parol evidence involves a two-step process. First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract. [Citation.] [¶] Different standards of appellate review may be applicable to each of these two steps, depending upon the context in which an issue arises. The trial court's ruling on the threshold determination of 'ambiguity' (i.e., whether the proffered evidence is relevant to prove a meaning to which the language is reasonably susceptible) is a question of law, not of fact. [Citation.] Thus the threshold determination of ambiguity is subject to independent review. [Citation.] [¶] The second step—the ultimate construction placed upon the ambiguous language—may call for differing standards of review, depending upon the parol evidence used to construe the contract. When the competent parol evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction will be upheld as long as it is supported by substantial evidence. [Citation.] However, when no parol evidence is introduced

[3]According to DICO's counsel, its proposed settled statement was timely filed without subsequent objection, but no hearing was ever held on it. However, the appellate division allowed augmentation of the record to include it. The trial court's order settling the City's statement for appeal states that the court considered DICO's "objections and supplement to the City of Chino's proposed statement" but it is unclear if the reference is to DICO's proposed settled statement. We consider DICO's proposed settled statement only to establish that extrinsic evidence was introduced, and that it conflicted.

(requiring construction of the instrument solely based on its own language) or when the competent parol evidence is not conflicting, construction of the instrument is a question of law, and the appellate court will independently construe the writing. [Citation.]" (*Id.* at pp. 1165-1166.)

Although there is no indication in our record that the trial court engaged in this two-step analysis, application of this standard of review is appropriate to resolve the issue here.

### THE NOVEMBER 16, 1989 INDEMNITY AGREEMENT

The agreement provides that the indemnitor "shall indemnify and hold harmless Surety from and against any and all liability, loss, claims, demands, costs, damages, attorneys fees and expenses of whatever kind or nature . . . which Surety may sustain or incur by reason of or in consequence of the execution and delivery by Surety of any Bond on behalf of Principal . . . including . . . the following: [¶] . . . [¶] . . . Liability incurred or expenses paid in connection with claims, suits or judgments relating to an Obligation or a Bond . . . ."

The agreement defines "Indemnitor" to include a person signing the agreement, and it is undisputed that Amy Jackson signed the agreement as an individual. The agreement further defines "Bond" as "[a]ny contract of suretyship . . . undertaken by Surety for Principal, whether before or after the date of this Agreement." The termination provision states: "This Agreement is a continuing obligation of Indemnitor unless terminated as to future Bonds by written notice to Surety . . . ."

### INTERPRETATION OF THE INDEMNITY AGREEMENT

In essence, as stated above, Amy Jackson relies on trial testimony to establish a conflict in the extrinsic evidence which was allegedly resolved by the trial court.[4] She argues that the indemnity agreement fails to show that it applied to the tracts in question. She also states that a demand letter sent by DICO to Jackson failed to include her as an addressee, failed to make any demand of her, and failed to include the November 16, 1989 indemnity agreement as an enclosure.

The first interpretive issue is whether the terms of the indemnity agreement are reasonably susceptible to the interpretation urged by Amy Jackson.

---

[4]Specifically, Amy Jackson states: "The problem with [DICO's] argument is that the Trial Court weighed the testimony of DICO's witness, Susan Moore, against the testimony of Schuyler W. Jackson, including documentary evidence, and concluded that DICO failed to establish sufficient evidence as to the liability of Amy Jackson." However, we are unable to find any indication in the record that the trial court did any such thing.

The determination of this issue is, under *Winet*, a determination of whether the agreement is ambiguous. The determination of ambiguity is a question of law.

We find no ambiguity in the indemnity agreement and we therefore conclude that extrinsic evidence is not and was not necessary to interpret it. As quoted above, the indemnity agreement clearly provides that the indemnitors, including Amy Jackson, are liable on any bond executed by surety on behalf of the principal, Jackson, whether it is executed before or after the indemnity agreement. There is nothing ambiguous about these provisions, and we find they mean what they say.

The indemnity agreement is not limited to bonds incurred in connection with any particular tract or tracts, nor is it limited to any particular type of bond. It expressly applies to *any* bond executed and delivered by surety on behalf of Jackson. It also does not require the surety to make any particular form of demand upon an indemnitor. It merely provides that the filing of a lawsuit against a principal is a default, and that upon such default the surety may file suit to enforce the indemnity agreement.

Nor did the trial court make any contrary findings. As noted above, it expressly stated that its decision was made solely on statute of limitations grounds, and that it had not decided any other issues of fact or law. Thus, even if extrinsic evidence had been properly admitted into evidence, the trial court drew no conclusions from it.

Amy Jackson disregards this fact and argues that the trial court must have determined the facts favorably to her position. Although she does not cite it specifically, she appears to rely on the principle that the appellant cannot attack the sufficiency of the evidence on an appeal based on a settled statement. ▇ In the usual case, the lack of a reporter's transcript does preclude arguments about the sufficiency of the evidence: "The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence. [Citations.]" (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992 [89 Cal.Rptr.2d 618].) In *Fain*, the trial court's statement of decision was therefore found to be supported by the evidence presented, and the statement of decision supported the judgment. (*Id.* at p. 994.) ▇ Amy Jackson apparently argues that we should indulge a similar presumption here and find that the trial court's decision in her favor must have been based on evidence to support it.

We reject any such argument. First, the trial court expressly stated that it had not made any factual determinations. Second, DICO carries its burden of

showing error by relying on the plain words of the indemnity agreement. Third, we have found that extrinsic evidence was unnecessary to determine the meaning of the indemnity agreement, and it should not have been admitted for that purpose.

The only issue is the interpretation of the indemnity agreement. Since our review is de novo, we do not even consider the alleged determinations of the trial court, and the sufficiency of the evidence to support them is not an issue.

If, as the trial court stated, the only issue it considered was the statute of limitations issue, there is no basis for its distinction between Amy Jackson and the other entities and individuals who signed the November 16, 1989 indemnity agreement. Under the plain terms of the indemnity agreement, each signatory is jointly and severally liable for the losses sustained by DICO as a result of its issuance of bonds to the City to guarantee Jackson's work. The trial court therefore erred in making a distinction between the signatories on statute of limitations grounds.

### DISPOSITION

The judgment in favor of Amy Jackson is reversed. DICO is to recover its costs from Amy Jackson.

McKinster, J., and Gaut, J., concurred.