Filed 10/6/14  Monroy v. Corson CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ALBA L. MONROY,<br><br>              Plaintiff and Respondent,<br><br>       v.<br><br>JAY CORSON,<br><br>              Defendant and Appellant. | B253370<br><br>(Los Angeles County<br> Super. Ct. No. PS015174) |

APPEAL from an order of the Superior Court of Los Angeles County.  Jeffrey M. Harkavy, Temporary Judge.  (See Cal. Const., art. VI, § 21.)  Affirmed.

Law Office of Jack T. Humes and Jack T. Humes for Defendant and Appellant.

Myers, Widders, Gibson, Jones & Feingold and Kelton Lee Gibson for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Plaintiff Alba L. Monroy sought a civil harassment restraining order against defendant Jay Corson, protecting herself and her adult daughter, who resided with her. Plaintiff was the property manager for the community where defendant lived, and claimed that defendant harassed her for months at the community's homeowners association meetings. Finding clear and convincing evidence in support of the requested order, the trial court issued a permanent restraining order, protecting plaintiff and her daughter.

On appeal, defendant contends the trial court's stated reasons for granting the order are insufficient as a matter of law. He also contends the trial court made a number of procedural and evidentiary errors that denied him due process. There is no reporter's transcript of the hearing on the petition, and defendant did not provide this court with either a settled statement or agreed statement. The trial court's statement of decision appears on its face to be thorough and well reasoned. On the inadequate appellate record, we have no basis to find error and therefore affirm the order.

## FACTS

The petition filed on April 2, 2013, alleged plaintiff is the "managing agent of Porter Ranch Estates" and defendant attends meetings of the community's homeowners association. Defendant had most recently harassed plaintiff on March 14, 2013, by "yelling at" her; he also "cornered [her]" and was "abusive." He was "secretly taking pictures" of her, and said "he was going to make sure and get rid of [her]." Plaintiff claimed to be "[e]motionally injured" and disturbed. Defendant had been verbally abusing her for at least four months. He "scares [her] to death." Plaintiff was worried defendant might "snap" and cause her harm in the future.

An incident report was appended to the petition, detailing defendant's activity at the March 14, 2013 meeting. According to the report, defendant used his iPhone's camera to take a picture of the area "between [plaintiff's] knees" while she was seated. Defendant deleted the photo when he was confronted by security. Also appended to the petition was a letter from the homeowners association's counsel to defendant, asking him to cease his inappropriate behavior at future board meetings, and that he refrain from

2

"screaming at Board members during Board meetings; . . . invading the personal space of Board members while screaming at them . . . ; and . . . taking photographs under the clothing, i.e., skirts, of unsuspecting female attendees of Board meetings . . . ." Finally, the petition included an email thread discussing an incident where defendant called plaintiff a "little bitch."

A temporary restraining order issued on April 2, 2013.

In his response filed May 7, 2013, defendant alleged he never threatened or harassed plaintiff. Defendant was unhappy with plaintiff's management of the community, and the Board of Directors of the homeowners association had held votes in the past to replace plaintiff as the property manager, but the Board was split on whether to remove her. Defendant decided to run for the Board, and intended to vote for plaintiff's removal if elected. He argued plaintiff was seeking a restraining order merely to "smear [defendant] in the community in order to maintain the status quo." He denied yelling at plaintiff at the March 14, 2013 public board meeting, but admitted he took a photograph of her to "demonstrate the inappropriateness of [plaintiff's] business conduct. . . ."

The hearing on the petition was held on May 17, August 16 and 19, and October 9, 2013. The trial court took the matter under submission, and issued a statement of decision on November 1, 2013, as follows:

"Over a period of approximately 5 months, the Court heard testimony from each of the parties, as well as from Mr. Tashaka Starwell, Mr. Thomas Edmond, Ms. Brenda [Karczag], Mr. Tom Putnam, Mr. Roy Sanchez, Mr. Thomas Stramat and Mr. John Paul Walker. The Court received physical evidence from both sides. These exhibits included a security report from Tashaka Starwell, photographs, diagrams, minutes of the meetings of the Northridge Community Association, emails, website information for Porter Ranch Estates and a declaration of Albin Becica. . . . [¶] . . . [¶]

"At all times relevant to this case, Petitioner, Alba Monroy (Monroy), was the property manager at Porter Ranch Estates (PRE). Monroy is employed by ABM Property Management (ABM), a [company] under contract to provide property management

3

services to PRE. PRE is a gate guarded community consisting of over 1,100 single family homes, recreational facilities and common areas. . . . Jay Corson (Corson), is a resident of this community. The Northridge Country Community Association (HOA), is the homeowners association for PRE and responsible for, among other duties: security, repairs, landscaping and maintenance of the recreational facilities and common areas.

"From all of the evidence presented, it is quite evident to the Court that segments of the Community are deeply divided over the management of the property and the actions of the HOA. Monroy has her supporters and detractors as does Corson. Corson has made it very clear by his words and actions that he has serious objections to Monroy's job performance and wants to see ABM and Monroy replaced. During the pendency of this action, Corson ran for an open seat on the Board of the HOA. He openly stated that if elected he would join with the other members of the Board in voting to terminate the contract with Monroy and ABM. He was unsuccessful in that election.

"As the Court stated repeatedly during the course of this hearing, Corson has every right to voice his objections to the actions of Monroy, ABM, and the HOA. He also has the right to attend open meetings of the HOA and address his fellow residents and members of the Board about his concerns and complaints. The Court did not permit testimony as to the validity of Corson's complaints. The Court ruled that such evidence was irrelevant for the purpose of deciding this case. Whether deemed valid or frivolous, it is not for this Court to determine the merits of Corson's issues. The only relevant issue before this Court is the alleged conduct of Corson in the presence of and directed at Monroy, whether it took place, and if so, whether it was unlawful.

"Monroy contends that on several occasions, that Corson has yelled at her, approached her in a hostile and threatening manner, has pointed or wagged his finger in her face, has called her a 'bitch', has used phrases such as 'I'm going to take care of you', 'you have no business here', and 'I will take care of you'. Monroy and several witnesses testified to these incidences and described Corson's actions and demeanor as hostile and aggressive. Monroy and her witnesses testified that she was profoundly affected by these encounters with Corson and that she has suffered severe emotional distress as a result.

4

Significantly, in order to further distance herself from Corson, Monroy testified that she has moved her residence as a result of Corson's conduct. Corson admitted that he made some statements that expressed his desire that Monroy be removed as the property manager for PRE. Generally, Corson denied making any threats to Monroy or to anyone else. He generally denied yelling or raising his voice at Monroy.

"Evidence was also presented that during a meeting of the Board of Directors of the HOA (the date of which was disputed)[,] Corson yelled at a member of the Board, Brenda Karczag. Corson admitted to raising his voice at Karczag but testified that he did so due to Ms. Karczag appearing at the meeting by phone connected to a speaker box and that the connection was poor. Other witnesses described Corson's tone was angry and hostile.

"After listening to and evaluating the testimony of each of the witnesses for each party, the Court finds that the overall credibility of Monroy and her witnesses as significantly stronger than that of Corson and his witnesses. In particular, Corson both in his testimony and during the testimony of others, exhibited signs of mocking and disrespectful behavior. It is apparent to this Court that Corson has significant issues with and negative opinions about Monroy and some of the employees from ABM that work directly with Monroy in the performance of her duties at PRE. The depth of this criticism has manifested itself as obsessive negative behavior by Corson directed at ABM in general and Monroy in particular. This Court does not purport to fully understan[d] the genesis of these opinions and feelings. Nor does this Court make any findings as to their objective validity. However, in viewing the evidence as a whole including observations of defendant's attitude and demeanor in Court during hearing, the Court finds that Corson displayed inappropriate and disproportionate animosity toward Monroy; and that this attitude manifested itself in hostile and abusive behavior. Perhaps the best single example of this was the picture taking incident of March 14, 2013.

"It is undisputed that during an open meeting of the Board of Directors of the HOA, that among others, Corson and Monroy were present. Monroy was seated at the end of a long table at the front of a school auditorium. The members of the Board were

5

also seated at this table. Corson was seated in the audience. Defense exhibits A, C and D, respectively, demonstrate the layout of the room and the approximate positions of the parties during the course of the meeting. It is also undisputed that while the meeting was in progress, Corson used his cell phone to take a picture of Monroy. Corson testified that he believed Monroy was dressed inappropriately for a board meeting. Specifically, Corson believed that Monroy's dress [skirt] was too short. He took a picture that would show the lower half of Monroy's body. Corson testified that it was his intention to attach the picture to an email and sen[d] it to certain residents in the community.

"There was much testimony and debate over whether Corson's intent was to take a picture showing the area between Monroy's legs. Corson denies that was his intent and argues that based upon the angle and distance of the parties, that such a picture would not have been possible. The photograph was deleted shortly after it was taken (at the insistence of the security guard who saw Corson take the picture). Therefore, the Court was not able to see the picture. It should be noted that neither Monroy nor any member of the Board saw the picture prior to its being deleted from the phone. In the final analysis, what the picture showed is of little relevance as it pertains to this case.

"Unquestionably, Mr. Corson was taking the picture of the lower portion of Monroy's body while she was seated and wearing a skirt. The Court does not find that the taking of the picture was to satisfy or appeal to any prurient interest. Rather, it was the latest act in a relentless campaign to oust Monroy from her position as property manager. Corson never considered the potential impact taking such a photograph would have on any woman. The Court finds that Corson's actions were motivated by his attempt to further his political ambitions to be elected to a seat on the board. And if successful, in a better position to have Monroy removed from her position as property manager.

"After careful consideration of all the evidence presented by both sides and the arguments of each counsel, and resolving all issues of weight and credibility, the Court makes the following findings: The Court finds by clear and convincing evidence that . . . Jay Corson, has engaged in a course of conduct that constitutes Civil Harassment as

6

defined in C.C.P. Section 527.6(b)(3), in that he engaged in a knowing and willful course of conduct that seriously alarmed, annoyed and harassed Alba Monroy and that these actions did not serve a legitimate purpose.

"In watching and listening to the testimony of Monroy, the Court finds by clear and convincing evidence that she sustained substantial emotional distress as a result of Corson's actions and conduct. And that any reasonable person under the same or similar circumstances would have suffered such distress.

"There does not appear to the Court that Corson has altered his opinions [or] perceptions of the job performance of Monroy or ABM. Nor, is there any requirement that he do so. But given his continued objections, and the fact that Monroy is still the property manager for the community where Corson resides, the Court finds by clear and convincing evidence that unless a permanent restraining order is issued, that Corson will continue his verbal and physical harassment of Monroy.

"Therefore, the Court orders that the temporary restraining order issued in this case be reissued as a permanent order good for three (3) years from the date of this Minute Order.

"In issuing this order, the Court is mindful that Corson may have reasons to contact ABM employees with regard to issues in his community. Therefore, the Court orders that Corson confine all his [communications] with ABM and their employees and/or agents to writing. The Court also recognizes that Corson has the right as a homeowner in the PRE community to attend open meetings of the Board of Directors of the HOA. If he chooses to exercise that right, he must stay at least 10 yards away from and have no contact with Monroy before, during and following these meetings."

This timely appeal followed.

### DISCUSSION

Defendant contends the reasons cited by the trial court in its statement of decision are insufficient to support the restraining order as a matter of law. He also contends there was no evidence supporting the inclusion of plaintiff's adult daughter as a protected person in the permanent restraining order. Additionally, he argues the trial court made a

7

number of procedural and evidentiary errors which denied him due process. He claims the trial court applied the wrong standard of proof, adopting a preponderance of the evidence standard, and that the trial court erred when it excluded evidence concerning the validity of defendant's grievances with plaintiff. He also contends the trial court erred when it issued the restraining order based on conduct not alleged in the petition.

Plaintiff points out that defendant has provided an inadequate record to support his claims on appeal. We agree, and therefore affirm.

Code of Civil Procedure section 527.6 " 'authorizes a "person who has suffered harassment" to obtain a [TRO] and injunction against the harassing conduct and provides an expedited procedure to obtain such an injunction . . . .' " (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762, citations omitted.) The clear and convincing evidence standard found in section 527.6 is not incorporated into the standard of review on appeal. (See *Crail v. Blakely* (1973) 8 Cal.3d 744, 750; *In re Marriage of Ruelas* (2007) 154 Cal.App.4th 339, 345.) Instead, "[t]he appropriate test on appeal is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record. [Citation.] [W]hether the facts, when construed most favorably in [plaintiff's] favor, are legally sufficient to constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of law subject to de novo review. [Citations.]" (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188, fn. omitted.)

Absent an oral transcript of the proceedings or its equivalent, an appellant cannot challenge the sufficiency of the evidence supporting a judgment. (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132; see also *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186-188.) There was no court reporter present to record the hearing on the petition. The California Rules of Court provide that where there is no reporter's transcript, an appellant may proffer a settled statement or agreed statement, when the "appellant intends to raise any issue that requires consideration of the oral proceedings." (Cal. Rules of Court, rules 8.120(b), 8.134, 8.137.)

8

Defendant did not provide either an agreed statement or a settled statement. Instead, he rested his appeal entirely on the trial court's statement of decision and other documents in the record. Defendant asserts this is adequate for appellate review, arguing he is not challenging the sufficiency of the evidence, but the legal sufficiency of the trial court's findings, as stated in its statement of decision. In short, defendant tries to make an end run around the substantial evidence standard of review.

A judgment is presumed correct, and an appellate court will infer factual findings in support of that judgment, even if they are not included in a trial court's statement of decision. (*City of Chino v. Jackson* (2002) 97 Cal.App.4th 377, 385; see also *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 49-50 [appellate review for sufficiency of the evidence extends to the entire record, and is not limited to facts mentioned in a trial court's statement of decision].) The trial court's statement of decision appears to be thorough and well reasoned. On the inadequate record provided, we have no idea what evidence does or does not support the trial court's order.

We also cannot discern the merit of the evidentiary and procedural claims. We have no reason to believe the trial court abused its discretion, or to find any claimed error prejudiced defendant. (*Miyamoto v. Department of Motor Vehicles* (2009) 176 Cal.App.4th 1210, 1217 [evidentiary rulings are reviewed for an abuse of discretion]; see also *Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 259 [absence of record precludes determination that trial court abused its discretion]; Cal. Const., art. VI, § 13 [a judgment will not be reversed absent a showing of prejudicial error].)

It was defendant's duty to "present a complete record for appellate review . . . ." (*Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039; see also *Foust v. San Jose Construction Co., Inc.*, *supra*, 198 Cal.App.4th at pp. 186-187.) Because he did not do so, the order must be affirmed.

## DISPOSITION

The order is affirmed.  Plaintiff shall recover her costs on appeal.


GRIMES, J.

We concur:

BIGELOW, P. J.


RUBIN, J.