Filed 5/5/22  Davis v. Nicholsen CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| MONICA DAVIS,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>HAMILTON NICHOLSEN,<br><br>　　　　Defendant and Respondent. | A161594<br><br><br>(Napa County<br>Super. Ct. No. 16CV000201) |

This is an appeal from final judgment after the trial court granted defendant Hamilton Nicholsen's motion to enforce a settlement agreement pursuant to Code of Civil Procedure[1] section 664.6.  Plaintiff Monica Davis seeks reversal on the grounds that there was no enforceable settlement agreement between the parties and even if there were, the judgment impermissibly altered its terms.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties are adjacent property owners in Napa County.  Plaintiff purchased her property in 1994 with a 20-foot deeded access easement (hereinafter, Easement) over the property located next door, which was purchased by defendant in 2006.  The Easement provided plaintiff access to

---

[1] Unless otherwise stated, all statutory citations herein are to the Code of Civil Procedure.

her home from Mund Road, a nearby public roadway. However, rather than accessing her property from Mund Road by way of the Easement, plaintiff for years used an existing paved roadway that also crossed defendant's property (hereinafter, Paved Roadway).[2] This led to disagreement between the parties.

## I.    *The October 2017 Agreement.*

In June 2016, plaintiff filed an amended complaint against defendant to quiet title to easement and for trespass. Shortly thereafter, defendant filed a verified cross-complaint for abandonment of easement, for trespass, and to quiet title. The parties, represented by counsel, participated in a mandatory settlement conference beginning in September 2017. During this conference, plaintiff learned defendant did not own a small portion of the Paved Roadway. Rather, this small portion was owned by a limited liability company set up by defendant's mother, Susanna Kelham.

The parties were unable to resolve their property dispute during this conference. However, they continued negotiating out of court and, on October 4 and 5, 2017, executed a document entitled "Settlement Agreement" that set forth in a numbered list format the basic terms of an agreement (October 2017 Agreement). Among other things, this agreement laid out a procedure by which the existing Paved Roadway would be recorded as a new easement and the existing Easement would be quitclaimed by defendant. Specifically, the October 2017 Agreement provided:

"1. Fences adjacent to or within the Easement as well as the gate at Mund Road shall remain as is. Latch to be mutually agreed upon through counsel, cost spilt [*sic*] 50/50. The gate on Mund Road may be locked. The

---

[2] Plaintiff refers to the Paved Roadway as the "existing right-of-way or driveway."

2

gate at the Davis property line may not be locked but must be secured with a closed latch that is easy to open. . . .

"2. The existing right-of-way to remain as is, but may be improved to a maximum of 20 feet, including shoulders, at Davis's sole expense if Davis is required to do so by a governmental entity or her homeowner's insurance carrier. Davis shall only be solely responsible for the expense of an improvement to the right of way if Davis is the one requesting the improvement or is solely the one required to make the improvement. . . .

"3. Davis and Nicholsen shall cooperate with a lot line adjustment and shall split the costs 50/50 with Davis' share not to exceed $7,000.

"4. Gate at Davis property line may be replaced with a gate of Davis's selection with a 50/50 cost split, subject to Nicholsen's approval, such approval shall not be unreasonably withheld.

"5. Amendment of deeded 20-foot easement to a metes and bounds description in a location mutually agreed upon through counsel along the existing right-of-way. Easement to be 20 feet wide including shoulders.

"6. 50/50 cost sharing to amend deeded easement as per No. 5.

"7. Mutual Release of all Claims and 1542 waiver. Waiver of costs and attorney's fees by both sides.

"8. Davis to select either Terra Firma or Albion Surveys to survey lot line adjustment and amendment to deeded easement.

"9. Court to retain jurisdiction to enforce settlement pursuant to CCP section 664.6.

"10. Nicholsen and Davis to cooperate in quitclaiming the express easement and recording a new easement. Any costs to be split 50/50.

"11. Parties to sign a final full-form binding settlement agreement consistent with these terms. . . ."

3

On October 6, 2017, the parties then filed a notice of settlement of entire case.

## II. *Defendant's Motion to Enforce the October 2017 Agreement.*

After trying unsuccessfully for several months to gain plaintiff's cooperation in designating a surveyor in accordance with paragraph 8 of the October 2017 Agreement—a prerequisite to completing the lot line adjustment and recording a new easement—defendant moved for enforcement under section 664.6. Plaintiff opposed the motion, arguing there was no meeting of the minds because defendant "ha[d] no intention of acquiring any of the Kelham property through a lot line adjustment in order to accommodate [her] amended easement."

A hearing was held May 30, 2018. Before continuing the matter, the trial court ordered plaintiff to comply with the October 2017 Agreement by retaining Terra Firma Surveys (Terra Firma) to perform the necessary surveying work. The trial court also ordered that the survey include the "Kelham portion of the disputed area." This order was subsequently amended to substitute Albion Surveys (Albion) for Terra Firma, as it became clear the former was unavailable.

In compliance with this court order, plaintiff retained Albion, and in June 2018 the parties signed an agreement with the company to perform the surveying work to complete the lot line adjustment. During the course of its work, Albion advised the parties the land parcels owned by defendant and Susanna Kelham that comprised the Paved Roadway would need to go through a "merger process" in order to complete the lot line adjustment. On October 22, 2018, defendant's attorney filed a declaration in court attesting that this merger process was complete and that Placer Title Company was in the process of recording and issuing a new deed for the merged parcels.

4

According to counsel, once the new deed was issued, Albion would be able to complete the application for the lot line adjustment; submit it to the county for approval; and, once approved, finalize the adjustment process.

In December 2019, defendant's attorney filed a new declaration attesting that, as of December 9, 2019, he had incurred over $15,700 in fees to complete the lot line adjustment in accordance with the October 2017 Agreement.

Finally, on February 21, 2020, the lot line adjustment between defendant's and Kelham's parcels was completed and recorded with the County of Napa.

In July 2020, defendant renewed his motion to enforce the October 2017 Agreement because plaintiff refused to sign a final settlement agreement in accordance with paragraph 11. The renewed motion was heard August 19, 2020. Ruling in defendant's favor, the court found plaintiff waived her argument that there was no meeting of the minds as to the settlement terms when she agreed in court to proceed under the October 2017 Agreement by retaining Terra Firma to perform the surveying work. The court further found that uncontroverted evidence disproved plaintiff's argument that the parties never reached agreement on the location of the new easement. The court pointed out that, in opposing defendant's motion, plaintiff argued her " 'main goal of the settlement' " was " 'resolving the discrepancy between [her] deeded easement and her existing driveway [i.e., the existing paved driveway].' " According to the court, "[t]he lot-line adjustment [completed by Albion] involves two of Defendant's parcels and the Kelham parcel, and it results in an easement, benefiting Plaintiff, that incorporates the driveway. [Citation.] Plaintiff fails to present any evidence to the contrary. For this reason, the uncontroverted evidence of Defendant's

5

performance under the Settlement Agreement tends to support [his] contention that he has provided Plaintiff with exactly what it is she now argues she understood she was entitled to under the Settlement Agreement."

Accordingly, on October 7, 2020, the court entered judgment in defendant's favor pursuant to the terms of the October 2017 Agreement. This appeal followed.

## DISCUSSION

Plaintiff contends the trial court erred in finding that the October 2017 Agreement was enforceable under section 664.6.[3] Alternatively, plaintiff contends the judgment entered by the trial court after granting defendant's section 664.6 motion improperly altered the terms of the October 2017 Agreement. We begin with the applicable law.

## I.    *The Applicable Law.*

"Section 664.6 permits a court to enter judgment pursuant to the terms of a settlement if the parties stipulate . . . in writing to settle all or part of a case. [Citation.]" (*Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 889 (*Skulnick*).)

A settlement agreement is a contract, subject to basic contract principles. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810 (*Weddington*).) As such, to be enforceable, the material terms of the settlement agreement must be reasonably well-defined and certain. (*Id.* at p. 811.) Further, the parties' outward manifestations must demonstrate that

---

[3] Section 664.6 provides in relevant part: "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (§ 664.6, subd. (a).)

6

they agreed to promised contractual performance.  (*Ibid.*)  When the material details are left to a future agreement, the settlement agreement is too uncertain to be enforceable.  (*Id.* at p. 817.)  " 'The paramount rule governing the interpretation of contracts is to give effect to the mutual intention of the parties *as it existed at the time of contracting*, so far as it is ascertainable and lawful [citation].  The [intention] of the parties must, in the first instance, be derived from the language of the entire contract.'  [Citations.]"  (*City of Chino v. Jackson* (2002) 97 Cal.App.4th 377, 382.)

When, as here, a party sues to enforce a settlement under section 664.6, the trial court assesses whether the material terms of the settlement were reasonably certain and whether the parties expressly acknowledged that they understood and agreed to be bound by those terms.  (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911 (*Marriage of Assemi*).)  In making this assessment, a trial court may in the sound exercise of its discretion consider oral testimony or declarations.  (*Corkland v. Boscoe* (1984) 156 Cal.App.3d 989, 994.)

On appeal, we consider only whether the trial court's decision to enforce the settlement agreement was supported by substantial evidence.  (*Marriage of Assemi, supra*, 7 Cal.4th at p. 911.)  Since the appellant bears the burden of proving the absence of substantial evidence, we may deem an evidentiary challenge waived if the appellant presents only facts and inferences favorable to its position while disregarding the unfavorable evidence.  (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1246.)

## II.    *Substantial evidence supports the trial court's finding that the October 2017 Agreement is enforceable.*

Plaintiff contends there is no evidence supporting the trial court's finding that she had a "meeting of the minds" with defendant with regard to the settlement terms.  Specifically, plaintiff argues that she never agreed to

the location of the new 20-foot easement as required under paragraph 5 of the October 2017 Agreement.[4]  Having reviewed the record in its entirety, we reject this argument.

First, plaintiff filed a declaration with the court attesting, "The 'existing right-of-way' referred to in Paragraph 5 is my driveway that travels over [defendant's] property.  A site map of my driveway, prepared by Terra Firma Surveys, Inc., shows that a portion of my driveway crosses over a portion of Parcel No. 021-301-008.  That parcel is owned by Kelham Vineyards & Winery, LLC.  My understanding is that that entity is controlled by Mr. Nicholsen's mother."  Consistently with this declaration, plaintiff confirmed, in opposing defendant's enforcement motion, that she "understood Paragraph 5 as meaning that her relocated deed easement would follow her existing driveway."  Her position is wholly consistent with defendant's position that under the October 2017 Agreement, "[plaintiff] was entitled to a newly deeded easement along the existing paved road that was 20 feet wide, including shoulders."

Thus, contrary to plaintiff's claim, substantial evidence demonstrates the October 2017 Agreement contained all the material terms required to accomplish the parties' shared intentions of (1) recording access for plaintiff across defendant's property in the location along the existing Paved Roadway that she used to access Mund Road and (2) extinguishing the Easement that plaintiff was not using for that purpose.  To the extent outstanding issues remained with respect to preparing a precise "metes and bounds" description of the new "deeded 20-foot easement" (Oct. 2017 agreement, par. 5) and

---

[4] Paragraph 5 of the October 2017 Agreement provides:  "Amendment of deeded 20-foot easement to a metes and bounds description in a location mutually agreed upon through counsel along the existing right-of-way. Easement to be 20 feet wide including shoulders."

securing and recording the necessary legal documents (*id.*, par. 10), the agreement provided a procedure for accomplishing them. This procedure included selecting a surveying firm to complete the lot line adjustment and amend the Easement (*id.*, par. 8).

Further, the record shows that after the parties signed the October 2017 Agreement, they each took steps in compliance with this procedure, with plaintiff's retaining Albion to complete the lot line adjustment and defendant's then paying Albion over $15,000 in surveying fees.

This evidentiary record provides ample support for the trial court's finding that the parties had a meeting of the minds with respect to the location of the new easement for purposes of paragraph 5 of the October 2017 Agreement.[5] (See *Marriage of Assemi, supra*, 7 Cal.4th at pp. 911–912 [upholding trial court's enforcement of a settlement agreement where substantial evidence proved "the parties, represented by counsel, engaged in settlement negotiations over an extended period of time, advised the retired judge of their desire to enter into a settlement disposing of all the matters that were to be arbitrated, explicitly defined and placed on the record the

---

[5] At oral argument, plaintiff's counsel noted that in March 2020, as soon as plaintiff received from defendant a copy of the final easement map prepared by Albion, she told defendant the proposed easement site " 'is not and has not been agreed to by me.' " Plaintiff's counsel neglected to mention what thereafter transpired between the parties. Defendant's counsel responded by pointing out the proposed easement location on the Albion map was precisely what the parties discussed. Counsel then requested that plaintiff provide a proposal of where she believed the easement should be and that plaintiff agree to meet and confer on the issue. However, for weeks, plaintiff refused to meet either request. Finally, after plaintiff failed to commit to one of several proposed meet and confer dates in July 2020, defendant filed this enforcement motion. On this record, the trial court was entitled to discount plaintiff's claim there was no meeting of the minds as to the easement's location. (*Pope v. Babick, supra*, 229 Cal.App.4th at p. 1246.)

9

terms of the settlement, . . . and expressly stated they understood and agreed to those terms"]; *Okun v. Morton* (1988) 203 Cal.App.3d 805, 819–821 [upholding trial court's enforcement of a settlement agreement despite disagreements between the parties regarding the extent of their responsibilities where "both defendant and plaintiff acted in strict accord with the provisions of the contract"].)

This same record undermines plaintiff's argument that the October 2017 Agreement was merely an " 'agreement to agree' " at a later date. As just explained, the material terms of the October 2017 Agreement were both reasonably clear and well understood when the parties willingly executed it. Thus, while paragraph 11 of the agreement calls for the parties to "sign a final full-form binding settlement agreement consistent with these terms," our case law holds, "Where the writing at issue shows 'no more than an intent to further reduce the informal writing to a more formal one' the failure to follow it with a more formal writing does not negate the existence of the prior contract. [Citation.]" (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 307.) Applying this principle here, we uphold the court's enforcement of the October 2017 Agreement.

## III.    *The judgment comports with the October 2017 Agreement.*

Last, plaintiff argues the judgment entered by the trial court impermissibly altered the terms of the October 2017 Agreement.[6] The following standard applies.

---

[6] We note that plaintiff, in making this argument, relies in part on the court's tentative ruling that preceded the final appealed-from order. It is well established a court's tentative order may not be used to impeach its final order or judgment. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 268.) Accordingly, we consider the judgment entered in this case without reference to the court's tentative ruling.

While the court may interpret the terms of the parties' settlement agreement, "nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Weddington, supra*, 60 Cal.App.4th at p. 810; see *Leeman v. Adams Extract & Spice, LLC* (2015) 236 Cal.App.4th 1367, 1375 ["While the court has the authority to refuse to issue the requested consent judgment, what the court c[an] not do in considering approval of a settlement under . . . section 664.6 [i]s to add to or modify an express term of the settlement"].)

Here, plaintiff contends the judgment strays from the October 2017 Agreement in providing, " 'The new legal boundary of the Easement is as delineated in the red outline attached as Exhibit C.' " Defendant counters that exhibit C (as well as exhibit B) to the judgment merely follows the terms of the settlement without impermissibly creating new terms. We agree with defendant.

As discussed *ante* (pp. 7–10), the trial court found, based on substantial evidence, the parties reached a meeting of the minds regarding the location of the new easement referenced in paragraph 5 of the October 2017 Agreement. Quite simply, this location was the existing Paved Roadway that crossed defendant's and Kelham's properties that plaintiff already used as a right of way. Exhibit B, incorporated into the judgment, is simply the recorded legal description of the new easement. And exhibit C, also incorporated, is the plot map prepared by Albion, the surveyor retained by plaintiff in accordance with paragraph 8 of the agreement, that identifies the new easement's precise location.

Under these circumstances, the court did not err by incorporating these exhibits into the judgment. Case law recognizes, "Section 664.6's 'express

authorization for trial courts to determine whether a settlement has occurred is an implicit authorization for the trial court to interpret the terms and conditions to settlement.' " (*Skulnick, supra*, 2 Cal.App.4th at 889; see *Malouf Bros. v. Dixon* (1991) 230 Cal.App.3d 280, 284 [the court did not err by determining that respondents complied with their repair obligations under the agreement, as the court "merely resolved questions about the settlement, by motion procedure as authorized by section 664.6"].)

Accordingly, because substantial evidence supports the trial court's fact finding with regard to the October 2017 Agreement, the judgment stands. (See *Weddington, supra*, 60 Cal.App.4th at p. 815 [factual determinations made by a trial court on a § 664.6 motion must be affirmed if the trial court's factual findings are supported by substantial evidence]; see also *Corkland v. Boscoe, supra*, 156 Cal.App.3d at p. 992 [" 'it is clear that the settlement agreement includes not only that document denominated "Settlement Agreement," but the two promissory notes and deeds of trust *executed pursuant thereto and later withdrawn by Boscoe*. It is indisputed that there was a meeting of the minds of all the parties as to all material portions of the notes and deeds, and there is no substantial reason to further delay the consummation of the agreement' "].)

## DISPOSITION

The judgment is affirmed.

 

                            _____

                            Jackson, P. J.

WE CONCUR:

_____

Simons, J.

_____

Burns, J.

A161594/*Davis v. Nicholsen*