Filed 6/4/21  Richmond v. Mikkelson CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER RICHMOND et al., | D076375 |
| Plaintiffs, Cross-defendants and Appellants, | (Super. Ct. Nos. 37-2017-00016311-CU-BC-CTL; 37-2018-00004335-CU-MC-CTL) |
| v. | |
| DAVID MIKKELSON | |
| Defendant, Cross-complainant and Respondent. | |

APPEAL from an order and judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Motion to dismiss appeal denied. Judgment affirmed.

Hrutkay Law, Matthew J. Hrutkay; Tencer Sherman, Philip C. Tencer and Jessica L. Mulvaney for Plaintiffs, Cross-defendants and Appellants Christopher Richmond and Drew Schoentrup.

Gordon Rees Scully Mansukhani, Richard P. Sybert, Kimberly D. Howatt, and Holly L.K. Heffner for Defendant, Cross-complainant and Respondent, David Mikkelson.

I.

INTRODUCTION

This consolidated action is a business dispute over ownership and control of the company that owns the fact-checking internet website "Snopes.com" (Snopes). Plaintiffs Christopher Richmond and Drew Schoentrup (appellants) appeal from a May 29, 2019 judgment in favor of defendant and respondent David Mikkelson and against appellants on Mikkelson's declaratory relief cross-claim alleging that appellants' purchase of a stock share is void and appellants have no right to the stock share. Mikkelson moved to dismiss this portion of the appeal on the ground that the May 29, 2019 judgment is not appealable. As we shall explain, we conclude that the May 29, 2019 judgment is an appealable collateral order that resolved all issues between appellants and Mikkelson. However, we reject the merits of appellants' challenge to the May 29, 2019 judgment and affirm.

Appellants also appeal from the trial court's order granting Mikkelson's motion under the statute prohibiting strategic lawsuits against public participation (anti-SLAPP statute), Code of Civil Procedure[1] section 425.16. We conclude that Mikkelson met his burden of establishing that the challenged conduct arose out of protected activity and that appellants failed to demonstrate a probability of prevailing on the merits. Accordingly, we affirm the order granting the anti-SLAPP motion.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

II.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In 1994, Mikkelson founded the Snopes website. In 2003, Bardav, Inc. (Bardav) was formed as a California corporation to operate Snopes, at which time two shares of stock in Bardav were issued: one each to Mikkelson and his then-spouse, Barbara Mikkelson (Barbara).[3] In 2014, Mikkelson and Barbara commenced marital dissolution proceedings (the dissolution case). In January 2016, a family law court in Los Angeles entered judgment in the dissolution case (the dissolution judgment). The dissolution judgment incorporated the terms of the couple's marital settlement agreement (MSA). Section 8 of the MSA addressed the couple's Bardav stock. The MSA provided:

> "[I]f either Shareholder seeks to sell *all or part* of his or her share(s), the other shall be given a ten (10) day right of first refusal to match the exact terms of that offer." (Italics added.)

> "Either party shall be able to block the sale of all or part of the sale of the company's shares . . . if it can be reasonably concluded . . . that the prospective buyer is antithetical to the health of [ ] [Snopes.com] [web]site or to its purpose. . . ."

> "Neither party shall take any actions to diminish the other shareholder's authority as contained in this settlement and/or judgment. . . ."

---

[2]   This section provides general background regarding the parties and the litigation. The facts related to the specific claims at issue in this appeal will be discussed in each discussion section.

[3]   During the litigation, Bardav changed its name to Snopes Media Group, Inc. We refer to the company throughout the opinion as Bardav.

Proper Media, LLC (Proper) is an internet media company that manages web properties. Bardav retained Proper under a general services agreement (GSA) to manage Snopes. Appellants are two of the original five members of Proper. The other members were Tyler Dunn, Vincent Green, and Ryan Miller.

In July 2016, Barbara sold her 50 percent interest in Bardav (the Barbara share) to the five individual Proper principals—appellants, Dunn, Green, and Miller (collectively the five buyers)—through a stock purchase agreement (SPA). The SPA specifies that the Barbara share was sold to these individuals in specific, varying percentages.[4] Mikkelson does not dispute that Barbara lawfully sold the Barbara share to the five buyers.

The five buyers financed the purchase of Barbara's 50 percent ownership interest in Bardav, in part, with a $1.75 million promissory note between Barbara and Proper (the Note). Each of the five buyers personally guaranteed the Note (the guarantee). The guarantee contains an automatic reversion interest in the Barbara share in the circumstance that Proper defaults on the Note, the default is uncured, Barbara demands that the guarantors satisfy the Note, and the guarantors fail to do so. Specifically, the guarantee states:

> "In the event of a default by [Proper] under any of the terms or provisions of the Note and expiration of any applicable cure period, should [Barbara] make a direct demand to the [appellants, Dunn, Green, and Miller] for fulfillment of any of [Proper's] remaining obligations and should [appellants, Dunn, Green, and Miller] fail to satisfy such obligations within fifteen days of the demand,

---

[4]     Mikkelson remains the president of Bardav, a director on its board, and a 50 percent shareholder of Bardav stock.

*ownership of the Shares shall automatically revert to [Barbara].*"  (Italics added.)[5]

In March 2017, Bardav terminated the GSA.  In May 2017, appellants and Proper filed suit against Bardav and Mikkelson alleging, among other things, that Mikkelson caused Bardav to breach the GSA (the lead case, case no. 37-2017-00016311-CU-BC-CTL).  Appellants later amended their complaint to add causes of action against Green and Miller.  Among other things, appellants alleged that Green and Miller conspired with Mikkelson to effectuate Mikkelson's scheme to gain control of Bardav.

Appellants and Proper sought a preliminary injunction to enjoin Bardav from terminating the GSA, remove Mikkelson from the Bardav board of directors (the Board), and inspect Bardav's records.  In response, Bardav sought injunctive relief to require Proper and appellants to release withheld advertising revenues, Snopes's only source of income.  The trial court granted Bardav's motion, requiring Proper to release the withheld monies and denied appellants' motion, finding that Bardav had properly terminated the GSA.

In May 2017, Bardav searched for an independent director to fill the seat on the Board vacated by Barbara.  Bardav appointed Brad Westbrook, an individual experienced with social news organizations and media technology.  Thereafter, Mikkelson and Westbrook increased the number of Bardav directors to three, but left the third position vacant.

In July 2017, Mikkelson and Snopes launched a crowdfunding campaign on GoFundMe called "Save Snopes," seeking public donations to pay Snopes's operating expenses, payroll, and legal fees.  The GoFundMe campaign met its initial fundraising goal of $500,000 in a single day.  The

---

5    We refer to this provision in the guarantee as the "reversionary interest."

5

GoFundMe campaign has since raised its fundraising goal to $2 million and receives donations on a daily or near-daily basis.

In October 2017, the Board adopted a new set of corporate bylaws. Section 6.3 of the Bylaws mirrors section 317 of the Corporations Code by authorizing Bardav to advance legal fees incurred by an agent "in defending any proceeding . . ., or any particular claim(s) within such proceeding (as determined by the Board)" prior to the final disposition of the proceeding and conditioned upon receipt of an undertaking. After the new bylaws were adopted, Mikkelson, Green, and Miller sought an advance of their reasonable attorney fees and costs in defending against the lead case. The Board executed a unanimous written consent authorizing these advances, and Mikkelson, Green, and Miller each submitted the requisite undertakings.

In October 2017, Mikkelson filed a cross-complaint in the lead case for declaratory relief and a hearing under Corporations Code section 709.[6] Mikkelson sought a declaration that the five buyers had voting rights independent of each other as the purchasers of Barbara's 50 percent interest in Bardav. He also sought the trial court's determination under Corporations

---

[6]     In relevant part, Corporations Code section 709 provides: "(a) Upon the filing of an action therefor by any shareholder or by any person who claims to have been denied the right to vote, the superior court of the proper county shall try and determine the validity of any election or appointment of any director of any domestic corporation. . . . [¶] (b) Upon the filing of the complaint, and before any further proceedings are had, the court shall enter an order fixing a date for the hearing, which shall be within five days unless for good cause shown a later date is fixed. . . . [¶] (c) The court may determine the person entitled to the office of director or may order a new election to be held or appointment to be made, may determine the validity, effectiveness and construction of voting agreements and voting trusts, the validity of the issuance of shares and the right of persons to vote and may direct such other relief as may be just and proper."

6

Code section 709 regarding the validity of Westbrook's appointment and subsequent election to the Board. Mikkelson also alleged that appellants and Proper had committed fraud and interfered with his prospective economic relations. The trial court granted Mikkelson's claim for relief under Corporations Code section 709 concluding: (1) Westbrook's election to the Board was valid; (2) the new bylaws were properly ratified; and (3) each of the five buyers individually owned fractional interests in the Barbara share.

In the meantime, appellants entered into a side agreement with Barbara to purchase Barbara's security interest in the Note and guarantee (the assignment contract). Under the assignment contract, appellants stepped into Barbara's shoes, holding all of Barbara's previously held rights and obligations under the Note and guarantee, including Barbara's reversionary interest which gave appellants the ability to demand payment of the outstanding balance and, in the event of an uncured default, to foreclose on the Barbara share. Proper then defaulted on the Note, and the cure period expired. Under the terms of the Note, appellants accelerated the outstanding balance due and demanded that Green and Miller cure the default. When Green and Miller did not pay the outstanding balance, appellants claimed ownership of the entirety of the Barbara share, pursuant to the reversionary interest contained in the guarantee, which they had purchased via the assignment contract.

Appellants notified Bardav of their ownership claim to the entirety of the Barbara share. Green and Miller objected to appellants' claim. Mikkelson also objected, asserting that the assignment contract violated the dissolution judgment and that appellants' claim was based on an illegal, and thus void, contract. In January 2018, Bardav filed a complaint to interplead the five stock certificates reflecting the fractionalized Barbara share owned

7

by the five buyers (the interpleader case; case no. 37-2018-00004335-CU-MC-CTL). In May 2018, the parties stipulated to consolidate the interpleader case with the lead case.

Mikkelson filed a cross-complaint in the interpleader case asserting a single cause of action for declaratory relief against appellants. Mikkelson sought a judicial determination that the assignment contract between Barbara and appellants was unlawful because it violated the terms of the dissolution judgment, and was thus void, resulting in appellants' inability to claim ownership of the entirety of the Barbara share thereunder. The trial court subsequently granted summary judgment in favor of Mikkelson on his cross-complaint in the interpleader action, concluding that the assignment contract was void.

In early 2019, appellants and Proper filed their third amended complaint (TAC) in the lead case against Bardav, Mikkelson, Green, Miller and Dunn, alleging 18 causes of action. The TAC added claims criticizing Bardav's corporate operations during the litigation, including the GoFundMe campaign and advances to cover legal fees incurred by Mikkelson, Green, and Miller. These allegations prompted Mikkelson and Bardav to file anti-SLAPP motions seeking identical relief, which the trial court granted.

Appellants appeal from the May 29, 2019 judgment in Mikkelson's favor on his declaratory relief cross-claim against them. Mikkelson moved to dismiss this portion of the appeal, arguing that the May 29, 2019 judgment is not an appealable order. Appellants also appeal from the trial court's order granting Mikkelson's anti-SLAPP motion. Although appellants also appealed

8

from the granting of Bardav's anti-SLAPP motion, they later dismissed that appeal.[7]

## III.

## DISCUSSION

A. *Mikkelson's Motion to Dismiss the Appeal*

1. The Parties' Contentions

Mikkelson moved to dismiss appellants' appeal from the May 29, 2019 judgment in the interpleader component of this consolidated case on the ground that this judgment is interlocutory because it did not resolve all claims in the case or all claims between Mikkelson and appellants, but instead, adjudicated only his affirmative cross-claim for declaratory relief. Mikkelson concedes that the summary judgment order and the subsequent May 29, 2019 judgment effectively vitiates appellants' pending cause of action for declaratory relief by adjudicating the validity of the assignment contract. Nonetheless, he contends that dismissal is appropriate because the May 29, 2019 judgment is not a final judgment as described in section 904.1. Specifically, he notes the existence of numerous active claims, including: appellants' cross-complaint; the interpleader complaint; the Green/Miller cross-complaint in the interpleader case; and lead case and its related cross-complaints.

Appellants argue that dismissal of the appeal is inappropriate, asserting that: (1) their cross-claim against Mikkelson in the interpleader

---

[7] Mikkelson requests judicial notice of documents that were before the trial court, or documents that were judicially noticed by the trial court. Appellants request judicial notice of Los Angeles County Superior Court records pertaining to Mikkelson's divorce that were presented to the trial court. The unopposed requests for judicial notice are granted. (Evid. Code, §§ 452, subd. (d) & 459, subd. (a).)

9

case cannot succeed in light of the May 29, 2019 judgment; and (2) this court can amend the May 29, 2019 judgment to reflect this reality and create a final judgment. We requested supplemental briefing from the parties addressing how the trial court's order consolidating the lead case and the interpleader case impacts Mikkelson's dismissal motion. We directed the parties to the following two cases: *Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1147 (*Hamilton*) and *Stubblefield Construction Co. v. City of San Bernardino* (1995) 32 Cal.App.4th 687, 701-703 (*Stubblefield*).

We received submissions from both parties. Mikkelson argues that although the trial court was silent as to the precise nature of the consolidation, the record reflects that the consolidation was for all purposes. Because unresolved claims remain in both the lead and interpleader cases, Mikkelson asserts that the May 29, 2019 judgment is not appealable. Appellants argue that the record supports a conclusion that the consolidation was for purposes of trial only, and that even if the cases were consolidated for all purposes, the May 29, 2019 judgment is nonetheless appealable as a final determination on a collateral matter, under a well-recognized exception to the "one final judgment" rule.

As we shall explain, the record supports the conclusion that the trial court consolidated the cases for all purposes. Nonetheless, we conclude that the May 29, 2019 judgment is appealable as a collateral order because it effectively disposed of the entire interpleader portion of this consolidated case between appellants and Mikkelson.

2. Analysis

"The appealability of [a] judgment or order is jurisdictional and an attempt to appeal from a nonappealable judgment or order will ordinarily be dismissed." (*Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289,

10

297.)  "[A]n appeal cannot be taken from a judgment that fails to complete the disposition of all the causes of action between the parties even if the causes of action disposed of by the judgment have been ordered to be tried separately, or may be characterized as 'separate and independent' from those remaining." (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743.)  "[A] judgment is final, and therefore appealable, ' " 'when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.' " ' [Citation.]  ' "It is not the form of the decree but the substance and effect of the adjudication which is determinative.  As a general test, . . . where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory." ' " (*Dhillon v. John Muir Health* (2017) 2 Cal.5th 1109, 1115.)

"[S]ection 1048, subdivision (a), authorizes the trial court, when appropriate, to 'order a joint hearing or trial' or to 'order all the actions consolidated.'  Under the statute and the case law, there are thus two types of consolidation:  a consolidation for purposes of trial only, where the two actions remain otherwise separate; and a complete consolidation or consolidation for all purposes, where the two actions are merged into a single proceeding under one case number and result in only one verdict or set of findings and one judgment." (*Hamilton, supra*, 22 Cal.4th at p. 1147.)  Where actions are consolidated for trial only, the judgment following the trial of one of the actions is final and appealable.  (*Stubblefield, supra*, 32 Cal.App.4th at pp. 701-703.)

11

On May 25, 2018, the parties stipulated to consolidate the lead case and the interpleader case, noting that the same parties are involved in both cases. The stipulation included a proposed order for the judge's signature that stated: "1. The Interpleader Case shall be consolidated with this Case with this Case being the lead case and the consolidated matter to remain pending before this Court; [¶] 2. The pre-trial and trial [dates] for this Case and the Interpleader Case shall be continued and set as follows: . . . ." Here, as in *Hamilton*, *supra*, 22 Cal.4th 1127, the stipulation and order are silent as to the type of consolidation ordered. (*Id*. at pp. 1147-1149.) Thus, resolution of this issue requires examination of the record to determine the type of consolidation ordered. (*Ibid*.)

First, review of the stipulation and order lead to different inferences. The stipulation and accompanying order do not state that the order is limited to consolidation for trial, a point the *Hamilton* court considered significant. (*Hamilton, supra*, 22 Cal.4th at p. 1148 ["More important, the court's order granting the motion was not limited to a consolidation for trial: rather the court declared that 'It Is Ordered that Action[s] Nos. 955576 and 975884 *are consolidated as Action No. 955576*. (Italics added.)' "].) However, that part of the order stating that "[t]he pre-trial and trial [dates] for this Case and the Interpleader Case shall be continued" could be understood to suggest consolidation for trial only. Accordingly, we must examine how the trial court subsequently treated the action.

After entry of the consolidation order, the clerk's minutes designated the consolidated proceeding by one title and the lead case number, suggesting the consolidation was for all purposes. (*Hamilton, supra*, 22 Cal.4th at p. 1148.) Significantly, the register of actions for the interpleader case ends on May 25, 2018—the date the trial court entered the consolidation order.

12

Additionally, during the pendency of this appeal, all parties stipulated that the trial court proceedings in both matters (referred to as the "entire Action") should be stayed pending the appeal of the anti-SLAPP rulings. The trial court granted this stipulation and stayed the entire action with the exception of a pending demurrer filed by Dunn. The stipulation provided that any cross-claims surviving the demurrer would then automatically be encompassed by the stay. This record supports a conclusion that the lead case and interpleader case were consolidated for all purposes. (*Hamilton*, at p. 1147.)

Appellants argue that even if the lead case and the interpleader case were consolidated for all purposes, the May 29, 2019 judgment effectively decided all remaining issues between appellants and Mikkelson in the interpleader action and constitutes a final judgment on a collateral issue. We agree.

" '[O]ne exception to the "one final judgment" rule . . . is the so-called collateral order doctrine. Where the trial court's ruling on a collateral issue "is substantially the same as a final judgment in an independent proceeding" [citation], in that it leaves the court no further action to take on "a matter which . . . is severable from the general subject of the litigation" [citation], an appeal will lie from that collateral order even though other matters in the case remain to be determined. . . . [¶] In determining whether an order is collateral, "the test is whether an order is 'important and essential to the correct determination of the main issue.' If the order is 'a necessary step to that end,' it is not collateral." ' " (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1084.)

"[T]he essence of the collateral order doctrine is that the matter concluded by the order should be truly 'distinct and severable from the

general subject of the litigation,' . . . It is only then that a piecemeal disposition and multiple appeals in a single action will be avoided." (*Muller v. Fresno Community Hospital & Medical Center* (2009) 172 Cal.App.4th 887, 904 (*Muller*).) As the *Muller* court explained, "[t]he interest that is served by the collateral order doctrine is the expeditious completion of appellate review, when that can be accomplished without implicating the merits of the underlying controversy." (*Ibid.*)

The issue presented in the interpleader action is entitlement to the interpleaded Barbara share. Appellants argue, and we agree, that the interpleader portion of the consolidated action is collateral to the subject matter of the lead case. Mikkelson also appears to acknowledge that the interpleader action is collateral to the subject matter of the lead action.

The May 29, 2019 judgment decided Mikkelson's cross-complaint against appellants in the interpleader action; the trial court determined that the assignment contract between Barbara and appellants is an illegal contract and void. Based on this conclusion, the trial court held that appellants had no right to the Barbara share and that Mikkelson was entitled to his costs from appellants. Mikkelson essentially concedes that the May 29, 2019 judgment decided appellants' pending declaratory relief claim against him regarding ownership of the Barbara share. Additionally, the May 29, 2019 judgment resolved the interpleader complaint as between appellants and Mikkelson.

Thus, the May 29, 2019 judgment effectively disposed of the interpleader case as between appellants and Mikkelson. (See *California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 9 [summary judgment solely as to one cause of action effectively disposed of remaining six causes of action and resulted in an appealable judgment], *Belio v. Panorama*

14

*Optics, Inc.* (1995) 33 Cal.App.4th 1096, 1101 [appeal from "the trial court's order granting summary adjudication as to the first cause of action" was properly before the court because the order " 'effectively disposed of the case.' "].)  " 'It is well settled that where . . . there is a judgment resolving *all* issues between a plaintiff and one defendant, then either party may appeal from an adverse judgment, even though the action remains pending between the plaintiff and other defendants.' " (*Oakland Raiders v. NFL* (2001) 93 Cal.App.4th 572, 578.)  Accordingly, it is irrelevant that a portion of the interpleader action remains pending between Green, Miller, and appellants.

For these reasons, we deny Mikkelson's motion to dismiss the appeal from the May 29, 2019 judgment and proceed to the merits of the appeal.

B. *The Trial Court Properly Granted Mikkelson's Summary Judgment Motion*

1.  General Legal Principles

We independently review an order granting summary judgment, viewing the evidence in the light most favorable to the nonmoving party. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)  We first identify the issues framed by the pleadings because it is those issues that the papers must address. (*Clark v. Baxter Healthcare Corp.* (2000) 83 Cal.App.4th 1048, 1054.)  Second, we determine whether the moving party's evidence demonstrates that the opponent cannot establish its claim and justifies a judgment in the moving party's favor. (*Ibid.*)  Finally, we determine whether the opposing party's evidence demonstrates the existence of a triable issue of material fact. (*Ibid.*)

In determining whether there are triable issues of fact, we consider all of the evidence set forth by the parties, except that to which objections have been made and properly sustained. (§ 437c, subd. (c); *Guz v. Bechtel*

*National, Inc.* (2000) 24 Cal.4th 317, 334.) To create a triable issue of material fact, a party opposing a summary judgment motion must present admissible evidence. (§ 437c, subd. (d).) Thus, we consider and construe liberally only admissible evidence in deciding whether there is a triable issue of fact. (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761.) In performing our review, we are not bound by the trial court's stated rationale, but independently determine whether the record supports the trial court's conclusion that plaintiff's claims failed as a matter of law. (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 951.)

2. Additional Background

As we previously noted—and appellants do not dispute—the dissolution judgment attached and incorporated the terms of Mikkelson and Barbara's MSA. Thus, the MSA is not merely a contract between Mikkelson and Barbara, but part of the dissolution judgment issued by the family court. The MSA addressed the couple's disposition of their Bardav stock and required that if either party sought to sell "all or part of" his or her share, the other party shall be given a 10-day right of first refusal. Inherent in receiving a 10-day right of first refusal is notice of any proposed sale.

Mikkelson does not dispute that Barbara lawfully sold the Barbara share to the five buyers. As part of that sale, the guarantee signed by appellants provided that in the event of an uncured default of the Note and a demand by Barbara, ownership of the Barbara share would "automatically revert" to her. Through the assignment contract, appellants purported to purchase Barbara's security interest in the Note and guarantee. Appellants do not dispute that Barbara failed to notify Mikkelson of the assignment contract prior to executing it and that Mikkelson did not receive a 10-day right of first refusal, as required by the dissolution judgment.

16

Mikkelson moved for summary judgment of his cross-complaint in the interpleader case on the ground that the assignment contract was void because its object—selling Barbara's reversion interest in the Barbara share—violated the terms of the dissolution judgment in four independent ways. Specifically, Mikkelson claimed that the assignment contract violated the dissolution judgment because Barbara entered into the assignment contract (1) without providing notice to him, (2) without giving him the required right of first refusal or opportunity to match the terms of the offer, (3) without affording him the required opportunity to object to buyers who are "antithetical to the health" of Snopes, and that she did so (4) in an attempt to diminish his authority as provided in the dissolution judgment.

The trial court found that the question whether the assignment contract violated the dissolution judgment required that the court interpret the dissolution judgment in the context of this case. The court granted the summary judgment motion, concluding that the assignment contract between appellants and Barbara was an illegal contract and void. The court explained that under section 8 of the MSA, which was incorporated into the dissolution judgment, Mikkelson and Barbara intended to prevent each of them from being able to transfer control of their respective Bardav share without allowing the other an opportunity to prevent the transfer. The trial court also found that Mikkelson and Barbara had agreed that: (1) one of them could block the other from selling all or part of " 'the company's shares, or substantially all of its assets, if it can be reasonably concluded by the arbiter that the prospective buyer is antithetical to the health of the site or to its purpose. . .' "; (2) each of them would have the right to prevent a change of control; and (3) neither of them was permitted to " 'take any actions to diminish the other shareholder's authority.' " The court stated that

17

permitting the assignment of a reversionary interest without notice to the other party, as Barbara purported to accomplish by entering into the assignment contract, would allow one party to circumvent the MSA.

3. Analysis

" 'Whether a contract is illegal or contrary to public policy is a question of law to be determined from the circumstances of each particular case.' " (*Dunkin v. Boskey* (2000) 82 Cal.App.4th 171, 183 (*Dunkin*).) California law requires that a contract have "[a] lawful object." (Civ. Code, § 1550, subd. (3).) "The object of a contract is the thing which it is agreed, on the part of the party receiving the consideration, to do or not to do." (*Id.*, § 1595.) A contract with an unlawful object is void. (*Id.*, § 1598.) Civil Code section 1667 defines "unlawful" as "1. Contrary to an express provision of law; [¶] 2. Contrary to the policy of express law, though not expressly prohibited; or, [¶] 3. Otherwise contrary to good morals." "For purposes of illegality, the 'law' is a broad term." (*Kashani v. Tsann Kuen China Enterprise Co.* (2004) 118 Cal.App.4th 531, 542.)

Appellants do not dispute that the MSA, which became part of the dissolution judgment, required that if either Mikkelson or Barbara sought to sell "all or part of" his or her share, the other shall be given a 10-day right of first refusal. Nor do appellants challenge the trial court's conclusion that the assignment contract constituted an illegal contract, based on the provisions of the dissolution judgment.[8] Instead, appellants contend that the trial court

---

[8] In their opening brief, appellants appear to have conceded that the assignment contract was illegal by arguing that the trial court erred by failing "to sever the problematic elements of the [assignment contract] from the lawful aspects." Appellants challenge the trial court's finding of illegality for the first time in their reply brief. Points raised for the first time in the reply brief will not be considered, unless the appellant demonstrates good reason for his failure to present them before. (*Reichardt v. Hoffman* (1997)

18

erred in granting summary judgment by finding, as a matter of law, that through the assignment contract, appellants purchased "part of" a Snopes share.

Appellants claim that whether their purchase of the Note and guarantee through the assignment contract conveyed to them an interest in "part of" a Snopes share presents a disputed factual issue. They claim that a triable issue of fact exists as to whether the MSA provided Mikkelson with a right of first refusal over the sale of Barbara's security interest in the Note and guarantee, citing inconsistencies in Mikkelson's prior sworn testimony to the family court in the dissolution case regarding the proper interpretation of the MSA. Appellants also contend that Mikkelson's arguments in the dissolution case create a triable issue of fact regarding whether the MSA is enforceable against them. We disagree.

Where no extrinsic evidence is offered to interpret an agreement, it is solely a judicial function to interpret a written instrument. (*City of Chino v. Jackson* (2002) 97 Cal.App.4th 377, 382-383.) Additionally, the legality of a contract is a question of law to be determined from the circumstances of each case. (*Dunkin*, *supra*, 82 Cal.App.4th at p. 183.) Because interpretation of the assignment contract and dissolution judgment presented questions of law, we reject appellants' argument that Mikkelson was required to present evidence regarding whether he and Barbara intended that the MSA be enforceable against third parties.

---

52 Cal.App.4th 754, 764.) Appellants have made no effort to explain why they did not challenge the trial court's illegality finding in their opening brief. Accordingly, out of fairness to Mikkelson, this argument must be deemed forfeited on appeal. (*Ibid.*)

Review of the contracts refutes appellants' argument that the reversionary interest contained in the guarantee was not part of the Barbara share held by Barbara at the time of the dissolution judgment. The SPA and accompanying Note and guarantee memorialized Barbara's sale of the Barbara share to the five buyers. The guarantee states that "part of the material consideration for allowing Guarantors to purchase said [Barbara] shares from seller is the conditions and agreement by each Guarantor to guarantee all terms and provisions and obligations of Debtor to Seller pursuant of the Note." Thus, Barbara retained a reversionary interest in the Barbara share after the sale of the Barbara share to appellants and the other buyers. Accordingly, appellants' subsequent purchase of the Note and guarantee through the assignment contract necessarily included Barbara's reversionary interest. Appellants later took advantage of this reversionary interest to claim ownership of the entire Barbara share.[9]

The trial court concluded that the portion of the MSA requiring that Barbara provide notice to Mikkelson if she sought to sell "part of" a share applied to Barbara's reversionary interest in the Barbara share. As the trial

---

[9]    Subdivision (a) of Commercial Code section 8302 provides that "[e]xcept as otherwise provided in subdivisions (b) and (c), a purchaser of a certificated or uncertificated security acquires all rights in the security that the transferor had or had power to transfer." Citing Commercial Code section 8302, appellants assert in a one-paragraph argument that Barbara could not have retained a "part of" her share when she delivered the certificated security to the five buyers. This argument ignores the exception listed in subdivision (b) of Commercial Code section 8302 that "[a] purchaser of a limited interest *acquires rights only to the extent of the interest purchased*." (Italics added.) When appellants and the other buyers purchased the Barbara share, Barbara retained a reversionary interest in the share, pursuant to the terms of the SPA. Appellants later purchased Barbara's reversionary interest with the assignment contract.

court correctly noted, the clear purpose of the provision in the MSA requiring notice of a sale was to allow Mikkelson and Barbara the option of preventing the other from transferring control of the shares without giving the other the opportunity to block the transfer. Through the assignment contract, appellants purchased Barbara's security interest in the Note and guarantee. The assignment contract transferring Barbara's reversionary interest in the Barbara share to appellants, without notice to Mikkelson, circumvented the clear purpose of the MSA by giving appellants control over the Barbara share without notice to Mikkelson, as required by the dissolution judgment.

Appellants cite Mikkelson's statements in the dissolution case to attempt to create a factual issue regarding the proper interpretation of the MSA. Specifically, Mikkelson, acting in propria persona, filed a request with the family court in the dissolution action for an order stating that Barbara lacked standing to invoke paragraph 8 of the MSA because she had sold her "entire" interest in Bardav when she sold her share to the five buyers. In a sworn declaration filed in connection with this request, Mikkelson stated that Barbara had "sold her *entire* share of Bardav. . . ." (Italics added.) Appellants argue that this evidence creates a triable issue of fact as to whether Barbara had any interest in the Barbara share to sell via the assignment contract.

The trial court rejected appellants' contention that this evidence constituted "legally binding admissions," noting that Mikkelson was not an attorney, that he did not make the statements in the context of whether a reversionary interest could constitute part of Barbara's share under the terms of the dissolution judgment, and Mikkelson could not unilaterally decide the proper interpretation of the dissolution judgment. We agree that

21

appellants' reliance on Mikkelson's interpretation of the SPA pursuant to which Barbara sold the Barbara share to the five buyers is misplaced.

Mikkelson was not a party to the SPA and his understanding of what Barbara sold by the SPA is irrelevant. (Evid. Code, §§ 210 & 350.) Moreover, Mikkelson's opinion of what Barbara sold by the SPA is inadmissible because "a witness is incompetent to give an opinion on the meaning of the contract language." (*DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.* (2009) 176 Cal.App.4th 697, 715; *Kasem v. Dion-Kindem* (2014) 230 Cal.App.4th 1395, 1401 ["expert opinion is generally not admissible on the legal interpretation of contracts"].)

Even if we could consider Mikkelson's statements, the documents and arguments that Mikkelson made in the dissolution case pertain to a portion of the MSA addressing the couple's obligation to have an arbiter resolve corporate disputes. In this context, Mikkelson argued that because Barbara had sold her entire share, she no longer had an ownership interest in Bardav. Mikkelson did not argue that the notice requirement in the MSA for sale of Bardav stock was no longer effective. In any event, the family court denied Mikkelson's requested order, impliedly holding that the dissolution judgment and MSA remained in effect. Mikkelson's summary judgment argument that the couple's dissolution judgment remained effective comports with the family court's order. Accordingly, we reject appellants' argument that a triable issue of material fact exists regarding whether the MSA allowed Mikkelson to block Barbara's sale of the Note and guarantee.

Appellants presented no admissible evidence creating a triable issue of material fact regarding interpretation of the assignment contract. Where, as here, interpretation does not turn on the credibility of extrinsic evidence, we interpret a contract de novo. (*City of Manhattan Beach v. Superior Court*

22

(1996) 13 Cal.4th 232, 238.) The assignment contract violated the terms of the dissolution judgment because it purported to sell Barbara's reversion interest in the Barbara share without affording notice or a right of first refusal to Mikkelson. Thus, the trial court correctly granted Mikkelson's motion for summary judgment on his cross-complaint for declaratory relief in the interpleader case, establishing that the assignment contract is unlawful, and therefore void as a matter of law. Based on this conclusion, we need not address appellants' remaining arguments that the May 29, 2019 judgment should be reversed because a triable issue of fact exists as to whether (1) the MSA provided Mikkelson with a right to block the sale of the Note on the basis that appellants' ownership would be antithetical to Snopes; and (2) the assignment of the Note deprived Mikkelson of authority.

To avoid summary judgment, appellants contend for the first time on appeal that even if the security interest in the Note is "part of" the Barbara share, it can be severed from other elements of the assignment contract. We reject appellants' argument that severance presents a change in legal theory and a question of law on undisputed facts that they may raise for the first time on appeal. The rule that an argument or theory will not be considered if raised for the first time on appeal applies to the appellate review of summary judgments; therefore, " 'possible theories that were not fully developed or factually presented to the trial court cannot create a "triable issue" on appeal.' " (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676.)

In any event, the assignment contract does not contain a severability clause. Generally, severability clauses within a contract "evidence the parties' intent that, to the extent possible, the valid provisions of the contract be given effect, even if some provision is found to be invalid or unlawful."

23

(*Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1230.) Even if we could consider this argument, appellants presented no evidence of the parties' intent regarding severability.

In sum, the trial court properly granted summary judgment on Mikkelson's cross-complaint for declaratory relief and we affirm the May 29, 2019 judgment.

C. *The Trial Court Properly Granted Mikkelson's Anti-SLAPP Motion*

1. Additional Background

Mikkelson filed a special motion to strike from the TAC appellants' claims for: (1) defamation and unfair competition (fourteenth through sixteenth causes of action) concerning the GoFundMe campaign; and (2) rescission and declaratory relief (seventeenth and eighteenth causes of action) concerning the legal fee advances. Mikkelson also sought to eliminate allegations within the body of the TAC relating to the propriety of the legal fee advances,[10] and allegations within appellants' direct claim against him for breach of fiduciary duty.[11]

Mikkelson argued that the GoFundMe campaign postings were protected acts in furtherance of his right to free speech. He also asserted that his litigation funding activities were protected as acts in furtherance of his right to petition. Appellants opposed the motion, asserting that the allegations concerning the advancement of legal funds were not protected under the anti-SLAPP statute. They also argued that even if the allegations constituted protected activity, striking them was not warranted because

[10] The parties refer to these allegations as the "advancement allegations" in their briefing. For convenience, we do the same.

[11] Bardav filed an identical motion, which the trial court also granted. Appellants appealed this order, but later dismissed the appeal.

24

appellants were likely to prevail on the merits of their unfair competition claims. The trial court granted Mikkelson's motion in its entirety.

Appellants do not challenge the order striking their fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth causes of action. Appellants challenge the order to the extent that the trial court struck the advancement allegations within the body of the TAC and within their sixth cause of action for breach of fiduciary duty and ninth cause of action for removal of director. Specifically, appellants argue that this court should reverse the order granting Mikkelson's motion to the extent the order strikes the following advancement allegations from the TAC: (1) paragraphs 14-16, 119, 122-134, 220(1), (2), and (10), and 254(1)-(3); and (2) section heading at TAC page 23, lines 7-8.

### 2. Basic Anti-SLAPP Principles

The anti-SLAPP statute authorizes a special motion to strike meritless claims early in the litigation if the claims "aris[e] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."[12] (§ 425.16, subd. (b)(1).) Anti-SLAPP motions are " 'intended to resolve quickly and relatively inexpensively meritless lawsuits that threaten free speech on matters of public interest.' " (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619 (*Rand*).)

---

[12] A "claim" refers to a set of facts allegedly giving rise to relief that constitutes a "proper subject of a special motion to strike." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 382 (*Baral*); see also *id.* at p. 395 [anti-SLAPP motion is directed to "alleged acts giving rise to a claim for relief"].) A "cause of action" refers to the separate counts as pleaded by the plaintiffs. (*Id.* at p. 382.) A single cause of action can incorporate more than one claim and a single claim can sometimes form the basis for more than one cause of action.

25

In considering a special motion to strike, courts employ a two-step process.  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)  In the first step, the moving defendants must show that the challenged claims are based on conduct "aris[ing] from" an act that furthers their speech or petition rights in connection with a public issue. (§ 425.16, subd. (b)(1).)  This includes, "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," (§ 425.16, subd. (e)(1)), "any written or oral statement or writing made in connection with an issue under consideration or review" by a judicial body (§ 425.16, subd. (e)(2)), "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" (§ 425.16, subd. (e)(3)) or "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subd. (e)(4).)

To make a showing under the first step, the defendant need only establish a prima facie case that its alleged actions fell into one of the categories listed in section 425.16, subdivision (e).  (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 314.)  If defendant can make this initial showing, the burden shifts to the plaintiff to demonstrate that "there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1); *Baral, supra,* 1 Cal.5th at p. 384.)

The second step of the anti-SLAPP analysis consists of "a 'summary-judgment-like procedure.' "  (*Baral, supra,* 1 Cal.5th at p. 384.)  Plaintiffs need to show only "minimal merit" to defeat the special motion to strike. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 94.)  At this stage, "[t]he court does

26

not weigh evidence or resolve conflicting factual claims . . . [but rather] accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Baral*, at pp. 384-385.)  The court "must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.  If not, the claim is stricken.  Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral*, at p. 396.)  We review de novo a court's rulings on whether the parties met their respective burdens.  (*Park*, *supra*, 2 Cal.5th at p. 1067.)

      3.  Analysis

            a.  Mikkelson Made a Prima Facie Showing that the Advancement Allegations Arose From Protected Activity

            i.  The parties' contentions

The trial court struck the advancement allegations under subdivision (e)(4) of section 425.16, which protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." The trial court concluded that "[t]he board authorizations were conduct that furthered the exercise of the constitutional right of petition—litigation funding.  The litigation funding would not have occurred without the board's authorization." The trial court further explained that, "the board authorizations were a necessary step to facilitate the protected activity. Plaintiffs seek to rescind the board's authorization to fund ongoing litigation, which would directly affect the protected activity—litigation funding.  The

board authorizations shaped the litigation funding as the purpose of the board authorizations was to provide litigation funding."

Mikkelson asserts that the advancement allegations qualify for protection under subdivision (e)(2) of section 425.16 because his litigation funding actions form the basis of appellants' claims against him for breach of fiduciary duty and removal of director, and litigation funding is protected petitioning activity. He also contends that the advancement allegations are also protected under subdivision (e)(4) of section 425.16 as conduct in furtherance of the exercise of the constitutional right of petition in connection with a public issue or an issue of public interest. Appellants contend that subdivision (e)(2) of section 425.16 does not apply because Mikkelson's approval of the legal fee advances were acts, not statements "made in connection with an issue under consideration or review" by a judicial body as required by subdivision (e)(2) of section 425.16. Appellants further contend that subdivision (e)(4) does not apply because the litigation funding at issue does not involve a public issue or a matter of public interest.

Appellants argue that Mikkelson's approvals of litigation funding are not entitled to protection under section 425.16, subdivision (e)(4), because the litigation funding furthered by the approvals related only to Mikkelson's personal business dispute with shareholders of two privately held companies, not speech or discourse concerning a public issue. Specifically, they contend that the trial court erred in striking the advancement allegations in the context of their breach of fiduciary duty and removal of director claims because the allegations (1) were not protected under subdivision (e)(4) as acts in furtherance of a public issue or issue of public interest and (2) merely provided examples of Mikkelson's breach of fiduciary duty and why he should be removed as a Bardav director.

Mikkelson responds that appellants failed to oppose his motion with respect to the advancement allegations and claims that we may affirm the order on this basis alone. He also notes that appellants did not argue in the trial court that the advancement allegations provided mere context for their sixth and ninth causes of action, nor did they argue that the conduct underlying these allegations, i.e., the litigation funding, did not involve a matter of public interest. In addition, Mikkelson contends that we should affirm the order because the trial court struck the same allegations from the TAC on Bardav's anti-SLAPP motion, that this order is final and not appealable and that the allegations cannot be resurrected. As to the merits of appellants' contentions, Mikkelson argues that the advancement allegations are protected petitioning activity under either subdivision (e)(2) or (e)(4) of section 425.16.

Generally, "arguments not asserted below are waived and will not be considered for the first time on appeal." (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3.) However, a new theory raising a pure question of law on undisputed facts may be raised for the first time on appeal. (*Ward v. Taggart* (1959) 51 Cal.2d 736, 742.) We exercise independent judgment in determining whether challenged claims arise from protected activity. (*Park, supra,* 2 Cal.5th at p. 1067.) Accordingly, to the extent that appellants failed to raise an argument in the trial court, we conclude that the argument is not waived.[13]

---

[13] Mikkelson notes that the trial court struck the same allegations from the TAC on Bardav's anti-SLAPP motion and that this order is final. Based on this order, Mikkelson argues that the allegations cannot be "resurrected." Mikkelson cited no authority to support his contention that this ruling binds appellants as to their claims against him. Hence, we deem the argument forfeited. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 ["When an issue is unsupported by pertinent or cognizable legal

ii. Application

"A cause of action against a person arising from *any act* of that person in furtherance of the person's right of petition or free speech . . . shall be subject to a special motion to strike. . . ." (§ 425.16, subd. (b)(1), italics added.) "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park*, *supra*, 2 Cal.5th at p. 1062.) " 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e). . . .' " (*Park*, at p. 1063.) Accordingly, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Ibid.*)

As noted, the anti-SLAPP statute broadly protects "any act . . . in furtherance of a person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue. (§ 425.16, subd. (b)(1).) In determining whether the advancement allegations arise from protected conduct, we must first determine the conduct that gives rise to Mikkelson's asserted liability, and then ascertain whether that conduct constitutes protected speech or petitioning. (*Park*, *supra*, 2 Cal.5th at p. 1063.) A claim arises from protected activity when that activity underlies or forms the basis for the claim. (*Id.* at p. 1062.)

Under subdivision (e)(2) of section 425.16, the anti-SLAPP statute protects all petitioning-related activity made in connection with an issue

---

argument it may be deemed abandoned and discussion by the reviewing court is unnecessary."].)

being considered or reviewed in an official proceeding, whether or not the statements involve a public issue or a matter of public interest. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1116 (*Briggs*).) As the *Briggs* court noted, "Any matter pending before an official proceeding possesses some measure of 'public significance' owing solely to the public nature of the proceeding, and free discussion of such matters furthers effective exercise of the petition rights section 425.16 was intended to protect. The Legislature's stated intent is best served, therefore, by a construction of section 425.16 that broadly encompasses participation in official proceedings, generally, whether or not such participation remains strictly focused on 'public' issues." (*Briggs*, at p. 1118.)

Appellants incorporated the advancement allegations into their sixth and ninth causes of action for breach of fiduciary duty and removal of director. On appeal, appellants assert that the advancement allegations do not form a basis for liability as to these causes of action and instead, are merely "incidental." (*Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 887 ["The critical point is that even assuming [the defendant] allegedly engaged in protected activities by his litigation actions, he still has the burden to show the [plaintiffs'] breach of fiduciary claim arose from these activities."].)

To address appellants' assertion, we must " 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] In so doing, courts should be 'attuned to and . . . respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity *or provide evidentiary support for the claim*.' " (*Gaynor, supra,* 19 Cal.App.5th at p. 878.) A "claim" properly subject to a section 425.16 motion is defined as "allegations of protected activity that are

31

asserted as grounds for relief." (*Baral*, *supra*, 1 Cal.5th at p. 395, italics deleted.)

"The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." (*Mosier v. S. Cal. Physicians Ins. Exch.* (1998) 63 Cal.App.4th 1022, 1044.) Appellants alleged that Mikkelson breached fiduciary duties owed to them by: "directing and causing [Bardav] to improperly advance legal expenses" incurred in defending himself against appellants' claims and bring counterclaims against appellants; executing written consents approving and authorizing Bardav to advance his attorney fees and costs incurred in defending this action; providing his vote, without which Bardav could not have approved advancement of attorney fees; writing letters to Bardav requesting indemnification; and "directing or otherwise causing [Bardav] to improperly advance personal legal expenses to [him] in violation of the Corporations Code and Bylaws."

Appellants' pleading demonstrates that the litigation funding actions on which the advancement allegations are based form the basis for Mikkelson's alleged liability for breach of fiduciary duty. Appellants also claimed in the operative complaint that they are entitled to damages based on Mikkelson's alleged breaches of fiduciary duty. Accordingly, the advancement allegations are asserted as grounds for relief. The litigation funding actions underlying the advancement allegations similarly form a basis for appellants' claim to remove Mikkelson as a Bardav director. Thus, contrary to appellants' contention, the advancement allegations are not merely incidental to their claims against Mikkelson.

We must therefore consider whether Mikkelson's litigation funding actions constitute protected conduct under the anti-SLAPP statute. Acts in

32

furtherance of the person's right to petition "include[ ] communicative conduct such as the filing, *funding*, and prosecution of a civil action. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*), italics added; *Takhar v. People ex rel. Feather River Air Quality Management Dist.* (2018) 27 Cal.App.5th 15, 28; *Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1166 ["insofar as a cause of action is based on the payment of funds to maintain a lawsuit, this constitutes protected activity that will be subject to a special motion to strike pursuant to section 425.16 unless the opposing party can demonstrate a probability of prevailing on the claim"].) This type of communicative conduct in furtherance of the right to petition is protected under section 425.16, subd. (e)(2) because it is essential to the exercise of the constitutional right of petition.

After reviewing the record de novo, we conclude that Mikkelson met his burden to establish a prima facie case that his alleged actions come within subdivision (e)(2) of section 425.16, because the conduct on which the advancement allegations are based is litigation funding, which is protected communicative conduct in furtherance of petitioning activity. (*Rusheen*, *supra*, 37 Cal.App.4th at p. 1056; *Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 357 [appellate court decides independently whether ruling on anti-SLAPP motion was correct, but need not decide propriety of trial court's reasoning].) Mikkelson's approval and expenditure of corporate funds to defend himself for actions he took in his capacity as a corporate officer, and his bringing crossclaims on behalf of Bardav, is similarly protected communicative conduct in furtherance of the right to petition. Because the conduct at issue is protected under subdivision

33

(e)(2), Mikkelson need not show that the statements involve a public issue or a matter of public interest.  (*Briggs*, *supra*, 19 Cal.4th at p. 1116).[14]

Appellants do not challenge the well-established notion that litigation funding constitutes protected petitioning activity.  However, they maintain that the litigation funding at issue in this case is not protected petitioning activity because the advancement allegations are acts, not statements made in connection with an issue under consideration by a judicial body.  In making this argument, appellants fail to recognize that section 425.16, subdivision (e)(2) protects *communicative conduct*, such as litigation funding, that is necessary to effectuate the right to petition.  In addition, Mikkelson's actions with respect to litigation funding impliedly include oral and/or written statements, and constitute protected communicative conduct within the meaning of *Rusheen*, *supra*, 37 Cal.4th at p. 1056.

---

[14]    As the trial court concluded, the advancement allegations are also protected under subdivision (e)(4) of section 425.16 as "conduct in furtherance of the exercise of the constitutional right of petition . . . in connection with a public issue or an issue of public interest."  The funding of this litigation involves an entity in the public eye.  (*Rand*, *supra*, 6 Cal.5th at p. 621.)  The popularity of the GoFundMe campaign as described in appellants' TAC presents direct evidence of the widespread public interest in the operation and governance of Snopes.  Appellants' argument that their causes of action against Mikkelson, and the advancement allegations, pertain to Mikkelson only as a private individual in a private dispute with other Bardav shareholders or another private company overlooks that Mikkelson is a Bardav director and its majority shareholder.  This argument also ignores appellants' own pleading.

Appellants' reliance on *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133 (*FilmOn.com*) to further their argument that the advancement allegations pertain to a private dispute is misplaced.  The *FilmOn.com* test does not apply here because the advancement allegations pertain to protected *petitioning* activity, not the exercise of protected free speech.

In summary, Mikkelson met his burden under the first step of the anti-SLAPP analysis. We therefore turn to the second step of the anti-SLAPP analysis, in which appellants must demonstrate a probability of prevailing on the challenged claim.

### b. Appellants Failed to Demonstrate a Probability of Prevailing

Once the defendant has met the burden to demonstrate that the relevant conduct arises from protected activity, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral, supra,* 1 Cal.5th at p. 396.) Appellants argue that the thrust of their claims against Mikkelson relate to actions he took to benefit himself, not any actions that he performed in his capacity as an employee, officer, or director of Bardav. Accordingly, appellants assert that they can demonstrate a probability of prevailing on the advancement allegations because they can show that Mikkelson was not made a party to any proceeding based on his status as a Bardav agent; thus, appellants claim that Mikkelson does not qualify for legal fee advancements pursuant to Corporations Code section 317 or the bylaws. In making this argument, appellants claim that *Allergia, Inc. v. Bouboulis* (S.D. Cal. 2017) 229 F.Supp.3d 1150, 1157 (*Allergia*) is instructive because, as in *Allergia*, their claims against Mikkelson relate to his actions in furtherance of his personal interests.

*Allergia, supra,* 229 F.Supp.3d 1150, involved claims for declaratory relief, breach of fiduciary duty and fraud by a corporation against defendant, its president, based on defendant's act of secretly filing patent applications "virtually identical" to the corporation's pending patent applications. (*Id.* at pp. 1151-1153.) Defendant sought advancement of legal expenses against plaintiff's suit under Corporations Code section 317 arguing that the

35

corporation sued him in his capacity as a former corporate officer or director.[15] (*Id.* at p. 1153.)

The *Allergia* court concluded that the defendant was not entitled to advancement of his legal expenses because he was not sued " 'by reason of the fact that' " he was a corporate agent, officer or director. (*Allergia, supra,* 229 F.Supp.3d at p. 1159.) In so holding, the court examined the causes of action alleged against defendant and found that the corporation's claims against defendant implicated actions that "predominantly benefit Defendant, but do not appear to be in furtherance of the corporate good or performed in connection with Defendant's corporate functions." (*Ibid.*) The court explained that the declaratory relief claim was a dispute regarding ownership of the patents and that the "claim [was] not against Defendant at all, much less " 'by reason of the fact' " that he was an officer or agent of the corporation." (*Ibid.*) Similarly, with respect to the causes of action for breach of fiduciary duty and fraud, the court noted that these claims arose out of defendant's filing of secret and competing patent applications, which implicated defendant's personal motives to retain sole ownership of the patents rather than to further the corporate good or his corporate functions. (*Id.* at pp. 1158-1159.)

The parties debate whether the *Allergia* court properly conditioned the advancement of legal expenses on a requirement that the defendant was sued

---

15    Subdivision (f) of Corporations Code section 317 provides: "Expenses incurred in defending any proceeding may be advanced by the corporation prior to the final disposition of the proceeding upon receipt of an undertaking by or on behalf of the agent to repay that amount if it shall be determined ultimately that the agent is not entitled to be indemnified as authorized in this section. The provisions of subdivision (a) of Section 315 do not apply to advances made pursuant to this subdivision."

" 'by reason of the fact that' " he or she was a corporate agent, officer or director. (*Allergia, supra,* 229 F.Supp.3d at p. 1159.) We need not address this dispute. Rather, for purposes of analysis we will assume, without deciding, that to obtain the advancement of legal expenses, the defendant must show that he or she was sued " 'by reason of the fact that' " he or she was a corporate agent, officer or director. To determine whether Mikkelson satisfied this standard, we turn to the allegations of appellants' operative complaint.

As to the sixth and ninth causes of action, appellants alleged that Mikkelson "caused" Bardav to improperly advance attorney fees and that this advancement of attorney fees violated Corporations Code section 317. Stated differently, appellants alleged that Mikkelson, in his capacity as a Bardav director, voted to advance legal expenses. Thus, appellants' pleading shows that Mikkelson was sued " 'by reason of the fact that' " he was a corporate director.

We next address whether appellants have shown a probability of prevailing on their claim that Mikkelson did not incur legal fees in his capacity as a Bardav director, but "for his personal legal representation in his divorce proceeding with Barbara" as appellants alleged. To support this allegation, appellants presented Richmond's declaration, which stated: "In the second half of 2016, Mikkelson's purported business expenses included tens of thousands of dollars in legal fees, which, *on information and belief*, were not for [Bardav's] benefit, but rather for personal legal representation in his ongoing divorce proceeding with Barbara." (Italics added.)

To show a probability of prevailing, "the plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial." (*Integrated Healthcare Holdings, Inc. v. Fitzgibbons*

37

(2006) 140 Cal.App.4th 515, 527.) " 'Unverified allegations in the pleadings or averments made on information and belief cannot make the showing.' " (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 405; *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1497 [averments based on information and belief are inadequate to show " 'a probability that the plaintiff will prevail on the claim.' "].)  Thus, appellants have not met their evidentiary burden of presenting admissible evidence showing a probability of prevailing on the advancement allegations as relevant to the sixth and ninth causes of action.

In a one paragraph argument, appellants cite subdivision (a)(3) of Corporations Code section 310 to assert that they can prevail on the advancement allegations because Mikkelson had a personal interest in advancing legal expenses and should have been excluded from voting on the issue.  Corporations Code section 310 provides, in part:

> "(a) No contract or other transaction between a corporation and one or more of its directors, or between a corporation and any corporation, firm or association in which one or more of its directors has a material financial interest, is either void or voidable because such director or directors or such other corporation, firm or association are parties or because such director or directors are present at the meeting of the board or a committee thereof which authorizes, approves or ratifies the contract or transaction, if
>
> "(1) The material facts as to the transaction and as to such director's interest are fully disclosed or known to the shareholders and such contract or transaction is approved by the shareholders (Section 153) in good faith, with the shares owned by the interested director or directors not being entitled to vote thereon, or
>
> "(2) The material facts as to the transaction and as to such director's interest are fully disclosed or known to the board or committee, and the board or committee authorizes,

38

approves or ratifies the contract or transaction in good faith by a vote sufficient without counting the vote of the interested director or directors and the contract or transaction is just and reasonable as to the corporation at the time it is authorized, approved or ratified, or

"(3) As to contracts or transactions not approved as provided in paragraph (1) or (2) of this subdivision, the person asserting the validity of the contract or transaction sustains the burden of proving that the contract or transaction was just and reasonable as to the corporation at the time it was authorized, approved or ratified. . . ."

Appellants argue that Mikkelson was an interested director and cannot show that his "facially self-interested approval" of the legal expense advancements "was just and reasonable to the corporation at the time it [was] authorized, approved or ratified" as required by subdivision (a)(3) of Corporations Code section 310. Mikkelson responds that subdivision (a)(3) of Corporations Code section 310 does not apply and that the advancements were just and reasonable.

At this stage of the analysis, appellants must show a probability of prevailing on the advancement allegations by presenting admissible evidence that subdivision (a)(3) of Corporations Code section 310 applies, i.e., appellants must present admissible evidence demonstrating that the transaction was "not approved as provided in paragraph (1) or (2) of this subdivision" and that the transaction was not "just and reasonable as to the corporation" at the time it was authorized. Appellants' brief cites no evidence showing that subdivision (a)(3) of Corporations Code section 310 applies. Appellants have thus failed to meet their evidentiary burden.

In summary, because appellants failed to demonstrate a probability of prevailing on the advancement allegations, the trial court properly granted the anti-SLAPP motion.

DISPOSITION

The order granting the anti-SLAPP motion is affirmed. Respondent's motion to dismiss the appeal from the May 29, 2019 judgment is denied. The May 29, 2019 judgment is affirmed. Respondent shall recover his costs on appeal.

AARON, Acting P. J.

WE CONCUR:

GUERRERO, J.

DO, J.

40